# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **KIMBERLY QUALLS CLANTON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:20-cv-01789-RDP** |
| | } | |
| **KILOLO KIJAKAZI,** | } | |
| **ACTING COMMISSIONER OF** | } | |
| **SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Kimberly Clanton brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed her application for SSI on October 10, 2011, alleging disability beginning July 30, 2011.  (Tr. 377, 415).  Plaintiff's application was denied initially and upon review by the Social Security Administration on January 12, 2012.  (Tr. 190).  On February 2, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 198).  The request was granted before ALJ Jerome Munford on February 11, 2013.  (Tr. 68-116).  Plaintiff, her counsel, and a vocational expert ("VE") were in attendance. (Tr. 68).

On April 12, 2013, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Act, from October 10, 2011 through the date of the decision. (Tr. 166-79). Plaintiff appealed the ALJ's decision to the Appeals Council on June 20, 2013. (Tr. 236). On November 21, 2014, the Appeals Council granted Plaintiff's request for review under the substantial evidence provision of 20 C.F.R. § 416.1470. (Tr. 184). Under § 416.1470, the Appeals Council vacated the ALJ's April 12, 2013 decision and remanded the case to an ALJ to: (1) obtain additional evidence concerning Plaintiff's PTSD; (2) further consider Plaintiff's residual functional capacity ("RFC") and provide appropriate rationale with specific references to evidence of record; and (3) obtain supplemental evidence from a vocational expert to clarify the effect of assessed limitations on Plaintiff's occupational base. (Tr. 185).

Accordingly, on March 17, 2015, ALJ Lisa M. Johnson held a hearing where Plaintiff, her counsel, and a VE were in attendance. (Tr. 117-25). On September 9, 2015, the ALJ issued a second unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Act, from October 10, 2011 through the date of the decision. (Tr. 48-61). On October 26, 2015, Plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 1197). The appeal was denied on January 26, 2017. (Tr. 1095-98).

On March 20, 2017, Plaintiff filed a new application for SSI benefits. On November 6, 2017, the Acting Commissioner entered a favorable initial determination with a disability onset date of March 20, 2017, stating that "[Plaintiff] met all the rules eligible for SSI based on being disabled." (Tr. 1268). On March 22, 2017, Plaintiff filed a complaint pertaining to her original October 10, 2011 application for SSI in the United States District Court for the Northern District of Alabama. (Tr. 1103-04). On November 8, 2017, Judge C. Lynwood Smith reversed the decision of the Commissioner from October 26, 2015, and remanded the case back to the Commissioner

for further proceedings to consider: (1) the assessments rendered by CED Mental Health Center and Dr. David Wilson and (2) the effect of Plaintiff's mental health condition on her ability to function in a work environment. (Tr. 1105-15). On July 19, 2018, Plaintiff was sent a notice by the Appeals Council advising her that her case would be reconsidered on remand, including the favorable opinion rendered on November 6, 2017. (Tr. 1205). The notice indicated the plan to consolidate the claims from Plaintiff's March 22, 2017 complaint with her claims that resulted in the favorable opinion on November 6, 2017. (Tr. 1205-09). The notice offered Plaintiff an opportunity to comment on that proposed action, but no comment was received. Therefore, on September 21, 2018, the Appeals Council ordered a reopening of the favorable determination made on November 6, 2017, a consolidation of the claims, and a remand back to an ALJ for further proceedings. (Tr. 1141-42).

Upon remand, ALJ Kristen Glover consolidated the two claims and created a single record. (Tr. 1014). On July 25, 2019, the ALJ held a hearing where Plaintiff, her counsel, and a VE were in attendance. (Tr. 1048-71). On November 6, 2019, with regard to the application filed on October 10, 2011, the ALJ determined that Plaintiff became disabled beginning November 1, 2019. (Tr. 1014-33). The ALJ further determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 1017-1020). The ALJ determined that Plaintiff has the RFC to perform "light work" with limitations, although she was not capable of performing her past relevant work as a nursery school attendant. (1020, 1031). On December 6, 2019, Plaintiff requested either a reversal and an Order finding Plaintiff disabled as of July 30, 2011, or a remand. (Tr. 1325). On October 29, 2020, Plaintiff's request was denied because the Appeals Judge found that the ALJ's decision complied with the orders of the U.S. District Court

and Appeals Council. (Tr. 1003). The Commissioner's determination is a final decision, and therefore a proper subject of this court's appellate review.

At the time of her third hearing, on July 25, 2019, Plaintiff was 54. (Tr. 1031). However, the ALJ applied the advanced age category of 55 years old. (*Id.*). Plaintiff had obtained a 12th grade education with Special Education classes. (Tr. 1056). Plaintiff initially alleged disability beginning July 30, 2011, (Tr. 377), but that date was amended to October 10, 2011. (Tr. 1052). Plaintiff's past relevant work includes working as a nursery school attendant. (Tr. 1031, 1392). Plaintiff alleges she is unable to engage in substantial gainful activity due to severe back and neck pain, as well as carpal tunnel syndrome, migraine headaches, depression, PTSD, and bipolar. (Tr. 1020).

During her purported period of disability, Plaintiff reported chronic neck and back pain from 2007 to 2017. (Tr. 555, 562, 702, 1916). Yet, findings show that Plaintiff only had mild to moderate bulging disks in her back with no disc protrusion or neural or spinal stenosis. (Tr. 555, 568, 609, 1472, 1922). Plaintiff's physical examinations were relatively normal; she self-reported that she could perform chores, and only required conservative treatment. (Tr. 557, 568, 585, 2045-46). In 2009, Plaintiff was diagnosed with degenerative disc disease[1] and given one injection and pain medicine due to continued complaints of back pain. (Tr. 594-95, 609). Plaintiff continued taking medication as treatment for her chronic low back pain, and treatment notes indicate she exhibited normal movement of all extremities. (Tr. 1085-89). In 2011, despite complaints of cramps in her hands, Plaintiff exhibited normal grip strength with no sign of tenderness, numbness, or tingling in her wrists. (Tr. 696-98). In 2015, Plaintiff was officially diagnosed with carpal tunnel

---

[1] Degenerative disc disease was confirmed by Mercy Health Center treatment records from 2012.

syndrome and referred for surgical carpal tunnel release, (Tr. 1474-76), which she reported responding well to. (Tr. 1480).

In 2007, Plaintiff was diagnosed with depression and anxiety, but she reported that prescribed medicine improved her mood. (Tr. 563-64). Although Plaintiff was deemed competent to manage funds, read, and write, Dr. Bentley determined Plaintiff's cognitive functioning fell within the Borderline Range. (Tr. 564). A general examination in 2007 revealed Plaintiff to be alert and cooperative with appropriate judgment and insight, even in social situations. (Tr. 563). In 2010, Plaintiff reported having "nervous break downs" but only took her medicine "when [she] really needed it." (Tr. 675). In 2010, Plaintiff was diagnosed with depression and PTSD. (Tr. 690). Advantage Behavioral Health records indicate conservative treatment using medication. (Tr. 685-86). Although Plaintiff was noncompliant with her medications during this time, her thought process was still noted as generally coherent and cooperative, and she was reported not to be a danger to herself or others. (Tr. 597-98, 626-28). In 2012 and 2013, Plaintiff was admitted to crisis units for suicidal ideation. (Tr. 621, 914). Records from 2015 suggest that although Plaintiff was unable to pay for her medication and had not taken it in three months, she was doing well. (Tr. 935-36).

Plaintiff had objectively normal status exams, and was considered friendly, polite, and cooperative through 2017. (Tr. 689-90, 875, 983, 999, 1778, 1803-06, 1824-25, 1832-33, 1848-49, 1856-57, 1988, 2058-62). In 2017, Dr. John Grace diagnosed Plaintiff with "Malingering," noting that the symptoms Plaintiff described were indicative of symptom exaggeration and dishonest responses. (Tr. 2058-61). Various doctors, including Dr. Grace, determined Plaintiff would have only moderate limitations despite her mental issues. (Tr. 677, 715, 2061-62).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 404.1572.  "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit.  20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criterion, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 10, 2011, and has a combination of the following severe impairments: major depressive disorder, post-traumatic stress disorder, degenerative joint disease of the lumbar and thoracic spine, obesity, carpal tunnel syndrome post left and right release, and anxiety. (Tr. 1017).  This satisfies steps one and two of the inquiry.  However, the ALJ further found that Plaintiff "does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 1018). The ALJ concluded that Plaintiff's severe physical and mental impairments were not so severe as to meet the requirements of the listings and created no more than moderate difficulties.[2]  (Tr. 1018-20).  In fact, the ALJ noted that Plaintiff remains fairly independent (*e.g.*, gets up and dressed, prepares simple meals, drives, and completes household chores). (Tr. 1029).

Next, the ALJ determined Plaintiff has the RFC to perform light work as defined in C.F.R. § 416.967(b), with the following limitations:

> No climbing ladders, ropes, or scaffolds; occasional climbing with respect to ramps and stairs; occasional balancing, stopping, crouching, crawling, and kneeling; frequent handling and fingering bilaterally, no more than frequent exposure to extremes in temperatures and workplace hazards; simple routine tasks with short instructions and simple work-related decisions; occasional interaction

---

[2] First, Plaintiff's degenerative joint disease and carpal tunnel do not satisfy listing 1.02 because there is no evidence of gross anatomical deformity and chronic join pain.  Second, Plaintiff's obesity itself is not a listed impairment although the ALJ did use it as a consideration. Third, Plaintiff's mental condition does not satisfy the mental disorder listings as there is no medically documented history of serious or persistent mental disorder.

with the general public, supervisors, and co-workers; and infrequent workplace changes.

(Tr. 1020). The ALJ further determined that no further limitations are supported by the medical evidence. (Tr. 1018-20). The ALJ found that Plaintiff had self-reported ongoing issues with various musculoskeletal issues, yet Plaintiff only needed conservative treatment for back pain and had only mild-to-moderate findings on x-ray imaging. (Tr. 1027). Additionally, the ALJ determined the objective record evidence did not support the severe degree of limitation that Plaintiff alleges from her mental impairments. The ALJ explained that Plaintiff did have three mental health episodes, but Plaintiff's mental status examinations had been stable and normal throughout most of the medical records and indicative of only moderate symptoms. (Tr. 1029-30). Accordingly, the ALJ gave little weight to one-time examining phycologist, Dr. Wilson, and Plaintiff's treating psychiatrist, Dr. Feist, finding their extreme limitations were conclusory and inconsistent with Plaintiff's treatment history and their own medical notes. (*Id.*).

Based on the testimony of the VE, at step four the ALJ found Plaintiff was unable to perform her past relevant work as a nursery school attendant. (Tr. 1031). The ALJ determined that prior to Plaintiff's disability onset date of November 1, 2019, jobs existed in significant numbers in the national economy that Plaintiff was able to perform based on her age, education, work experience. (Tr. 1032). Accordingly, the ALJ determined Plaintiff had not been under a disability since October 10, 2011, the date her first application was filed, and instead only became disabled on November 1, 2019 and her disability was expected to last twelve months past the onset date of November 1, 2019. (Tr. 1033).

## III.  Plaintiff's Argument

Plaintiff argues that she is entitled to benefits with an onset of July 30, 2011, rather than an onset of November 1, 2019. Plaintiff makes two specific arguments to support her claim: (1) that

the ALJ failed to accord proper weight to Dr. David Wilson, the examining psychologist, and Dr. Fredric Feist, the treating psychiatrist, and (2) that substantial evidence does not support the ALJ's decision because it wrongly relied on the vocational expert's response to the hypothetical questions.

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings are limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.      Discussion

### A.      Whether the ALJ Accorded Proper Weight to the Opinions of Dr. Wilson and Dr. Feist.

In determining the weight to afford medical opinions, the ALJ considers all the medical opinions in the claimant's case record together with other pertinent evidence. *See* 20 C.F.R. §§ 404.1520(e); 1527(c) (looking at the examining and treatment relationship between claimant and doctor, the length of the treatment and frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the physician's specialization, and other factors that tend to support or contradict the medical opinion).

Generally, the ALJ must give a treating physician's medical opinion "substantial or considerable weight," unless they have good cause to disregard it. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. § 404.1527(a)(2) (defining treating physician as a doctor who has provided the claimant with previous ongoing medical treatment). Unlike treating physicians, however, one-time examiners are "not entitled to great weight" automatically. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *see also Clough v. Comm'r of Soc. Sec.*, 813 F. App'x 436, 440 (11th Cir. 2020); *McSwain v. Bowen*, 814 F.2d 617, 619 (holding one-time examiners are not entitled to deference or special consideration).

An ALJ has good cause to give less weight to a treating physician's opinion when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2003). An ALJ may discount or reject an opinion that is not accompanied by objective medical evidence or is wholly conclusory or inconsistent with the doctor's treatment notes or other record evidence. 20 C.F.R.

10

§ 416.927(c)(3); *Crawford*, 363 F.3d at 1159-60.  When doing so, the ALJ must state with particularity the weight given to medical opinions with "some measure of clarity" for her decision, stating the reasons why.  *Winschel*, 631 F.3d at 1176-79.

### 1.     Dr. Wilson

Substantial evidence supports the ALJ's decision to give little weight to Dr. Wilson's opinion.  First and foremost, Dr. Wilson was not a treating physician and therefore his opinions are not automatically entitled to substantial or considerable weight.  *See Crawford*, 363 F.3d at 1160; *Winschel*, 631 F.3d at 1179.  Plaintiff was examined by Dr. Wilson only once at the request of her own attorney.  (Tr. 991).  Dr. Wilson's opinion is not entitled to deference or special consideration.  *See McSwain*, 814 F.2d at 619.

But even if Dr. Wilson had been a treating physician, substantial evidence still supports the ALJ's decision to give little weight to his opinions.  Contrary to Plaintiff's bare assertion suggesting otherwise, the ALJ assessed the record evidence and stated with particularly the reasons for giving Dr. Wilson's opinions less weight. *See Winschel*, 631 F.3d at 1176-79.  "These extreme limitations are inconsistent with [her] treatment history as well as inconsistent with the objective findings within Dr. Wilson's own report."  (Tr. 1029).   And, she fails to list the reasons why Dr. Wilson's opinions should have been given more weight.  Plaintiff provides nothing to advance her arguments, but merely states with no record evidence that "Dr. Wilson's evaluation is supported by [Plaintiff's] long history of mental treatment." (Doc. #11 at 34); *see Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *Singh v. U.S. Att'y Gen*., 561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that an appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies).  "Simply stating that an issue exists, without further

argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." *Singh*, 561 F.3d at 1278.  Accordingly, Plaintiff has abandoned this issue for failure to develop a meaningful argument.

Considering the objective medical evidence alone, the ALJ was warranted in finding Dr. Wilson's opined limitations somewhat extreme.  Throughout 2011 to 2017, treatment records document that Plaintiff's mental health conditions were stable when compliant with medication and that she had a good response to medication. (Tr. 563-64, 689, 783, 976, 1590).  Plaintiff had stated that her ultimate goal was to manage her mental state without relying on medication.  (Tr. 1744).  Medical record evidence shows Plaintiff's objective mental status exams were normal.  (Tr. 689-90, 782-83, 862, 875, 983, 999, 1618, 1706-07, 1714, 1733-34, 1745-46, 1757-58, 1778, 1803-06, 1824-25, 1832-33, 1848-49, 1856-57, 1988, 2058-62). On multiple evaluations, Plaintiff was deemed alert, oriented, and cooperative, and her estimated intelligence, memory, affect, and thought processes were normal.  (Tr. 1604, 1745-46, 2085-62).

Not only is Dr. Wilson's assessment questionable considering the objective record evidence, it is extreme in light of his own clinical report of Plaintiff, which was based heavily on Plaintiff's own self-reported symptoms.  Dr. Wilson used a health source statement to declare Plaintiff's limitations.  As pointed out in *Gaddison v. Saul*, the mental health source statement is a form that contains general statements with check marks giving absolutely no explanation for the answers given.  Case No. 4:18-CV-0811-JEO, 2020 WL 374621, at *7 (N.D. Ala. Jan. 23, 2020.  "It is conclusory and has limited probative value." *Id.* Beyond being conclusory, Dr. Wilson's extreme limitations contradict Plaintiff's capabilities that he himself noted.

Although Dr. Wilson noted that Plaintiff arrived on time and drove herself, (Tr. 994), he deemed Plaintiff unable to perform activities within a schedule and be punctual.  (Tr. 997).

Further, Dr. Wilson noted Plaintiff presented herself with neat hygiene and appearance and was cooperative and respectful (Tr. 994); yet, he deemed her unable to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and interact appropriately with others. (Tr. 997). Dr. Wilson lists Plaintiff's daily activities as getting up, dressing herself, making something to eat, doing chores, playing with her dog, and watching television. (Tr. 994). However, he deemed Plaintiff unable to sustain an ordinary routine without special supervision. (Tr. 997). Dr. Wilson also noted that Plaintiff's thought processes were intact, her speech was clear and normal, and she had the ability to do simple math and recall items after 10 minutes. (Tr. 995). But, he deemed Plaintiff unable to maintain attention and unable to understand, remember, or carry out even short and simple instructions. (Tr. 997). It is both conclusory and inconsistent to suggest that Plaintiff would be unable to perform any job all days out of a month. (Tr. 997). Due to the lack of objective medical evidence and inconsistency, the ALJ, relying on substantial evidence, appropriately accorded Dr. Wilson's opinion less weight. *See* C.F.R. § 416.927(c)(3); *see also Crawford*, 363 F.3d at 1159-60.

### 2. Dr. Feist

Again, Plaintiff simply asserts that "Dr. Feist's opinions are supported by the records at CED Mental Health Center as well as the treatment records from other facilities." (Doc. #11 at 37). Plaintiff has abandoned the issue regarding Dr. Feist because, once again, Plaintiff fails to cite to any record evidence in support of her contention. *See Sapuppo,* 739 F.3d at 681; *Singh*, 561 F.3d at 1278.

Putting aside this issue, substantial evidence supports the ALJ's decision to grant Dr. Feist's opinions little weight. Dr. Feist opined that Plaintiff's mental impairments made her virtually unable to work; however, to the contrary, the record reflects conservative treatment with

medication. (Tr. 563-64, 689, 780, 976, 1590). Like *Horowitz v. Comm'r of Soc. Sec.*, the conservative and routine nature of this treatment plan suggests that Plaintiff's impairments, while significant, were not so severe that she could not perfect any job duties. 688 F. App'x 855, 861 (11th Cir. 2017); *see also Wolfe v. Charter,* 86 F.3d 1074, 1078 (11th Cir. 1996) (noting that a physician's conservative medical treatment for a condition may negate a claim of disability). Additionally, Plaintiff's objective mental status exams were normal. (Tr. 689-90, 782-83, 862, 875, 983, 999, 1618, 1706-07, 1714, 1733-34, 1745-46, 1757-58, 1778, 1803-06, 1824-25, 1832-33, 1848-49, 1856-57, 1988, 2058-62).

Dr. Feist's opinions were also inconsistent with his own notes. *See* 20 C.F.R. § 416.927 (c)(4). Although Dr. Feist noted that Plaintiff's attention span was adequate, he deemed Plaintiff unable to maintain attention for at least two hours. (Tr. 988-89). Further, Dr. Feist noted that Plaintiff's behavior was appropriate, yet he deemed Plaintiff unable to interact appropriately with others. (*Id*.). Lastly, although Dr. Feist found Plaintiff's mood to be euthymic, her affect to be normal, and that she was appropriately oriented, he determined that Plaintiff would be unable to work more than 20 days in a 30-day work period. (*Id*.). Dr. Feist gave no explanation to support these opinions and his limitations are wholly conclusory. Finally, although Plaintiff contends that the ALJ was too critical of Dr. Feist's use of a yes/no questionnaire, substantial evidence supports the ALJ's decision to give little weight to Dr. Feist's opinions. *See Schink v. Comm'r of Soc. Sec*., 935 F.3d 1245, 1262.

   **B.     Whether the Vocational Expert's Response to the ALJ's Hypothetical Questions Provided Substantial Evidence to Support the ALJ's Finding that Prior to November 1, 2019, There Were Jobs that Plaintiff Could Have Performed**

In deciding whether a claimant may perform other work in the national economy, the ALJ may consult a VE by way of a hypothetical question. *Wolfe,* 86 F.3d at 1077-78. For a VE's

testimony to constitute substantial evidence on which the ALJ may rely, the question must comprise all impairments. *Vega v. Comm'r of Soc. Sec.,* 265 F.3d 1214, 1220 (11th Cir. 2001); *see Ingram v. Comm'r of Soc. Sec.,* F.3d 1253, 1270 (11th Cir. 2007) (emphasizing that the hypothetical need not include each and every symptom but rather every impairment).

Plaintiff contends that the hypothetical question assumed she could work. (Doc. #11 at 40). Yet, after giving the hypothetical, the ALJ merely asked the question, "would there be other work in the national economy?" (Tr. 1069). Plaintiff also cites *Pendley v. Heckler*, which was a case where the VE did not consider the existence of severe psychological problems. 767 F.2d 1561, 1563 (11 Cir. 1985). Here, however, the ALJ limited the hypothetical questions to someone who could only handle simple and routine tasks with short instructions; simple work-related decisions; occasional interaction with the public, co-workers, and supervisors; and gradual and infrequent workplace changes. (Tr. 1068). This precisely addresses Plaintiff's psychological impairments. The ALJ also limited the hypothetical question to light work where the individual could only occasionally climb ramps and stairs; could occasionally balance, stoop, crouch, crawl, and kneel; and could not be exposed to extreme temperatures, unprotected heights, or moving machinery. (Tr. 1068). This precisely addresses Plaintiff's physical impairments. *See Pritchett v. Comm'r, Soc. Sec. Admin.*, 315 F. App'x 806, 813 (11th Cir. 2009). The ALJ's hypothetical questions to the VE included all her impairments, while correctly assuming Plaintiff's age, education, and work experience. The ALJ did not err and properly relied on the VE's testimony to find that Plaintiff could perform other light work that existed in significant numbers in the national economy prior to 2017.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 13, 2022.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE